UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD FRANKLIN,<br><br>               Plaintiff,<br><br>    v.<br><br>GOVERNMENT EMPLOYEES INSURANCE COMPANY, a Maryland Corporation; and GEICO GENERAL INSURANCE COMPANY, a Maryland Corporation,<br><br>               Defendants. | CASE NO. C10-5183BHS<br><br>ORDER DENYING MOTION FOR CLASS CERTIFICATION |

This matter comes before the Court on Plaintiff Richard Franklin's ("Franklin") motion to certify class (Dkt. 36), Defendants Government Employees Insurance Company ("GEICO") and GEICO General Insurance Company's ("GEICO General") (collectively "Defendants") motion to exclude the expert reports of Nayak L. Polissar, Ph.D. (Dkt. 47), Defendants' motion to exclude the expert reports of Kristin L. Wood, Ph.D. (Dkt. 49), and Defendants' motion for leave to file a surreply (Dkt. 71). The Court has reviewed the briefs filed in support of and in opposition to the motions and the remainder of the file and hereby denies the motion for class certification the reasons stated herein.

**I. PROCEDURAL HISTORY**

On March 17, 2010, Franklin filed a complaint against Defendants on behalf of himself and as the proposed representative of a class. Dkt. 1. Franklin alleges that GEICO General breached its contract of automobile insurance with Franklin and that the

ORDER - 1

Defendants breached similar contracts with members of the proposed class. *Id*. Franklin's causes of action are based on the theory that an automobile suffers diminished value ("DV") after the automobile has been damaged in a collision. *Id*. ¶¶ 4.1-4.4. The specific allegations regarding Defendants' breaches of the contracts are as follows: (1) Defendants breached the express provisions of their contracts "by failing to disclose the right to recover diminished value, by failing to assess [the insureds'] diminished loss, and by not compensating them for [the insureds'] diminished value loss;" and (2) Defendants "breached the express provisions of its contracts with certain members of the Class by paying their [uninsured or underinsured motorist property damage ("UMPD")] or hit-and-run claims under its collision or comprehensive coverage" ("mischaracterization claim"). *Id*. ¶¶ 7.6 & 7.7. Franklin seeks specific performance or damages, declaratory and injunctive relief. *Id*.

On June 3, 2010, Defendants filed a motion to dismiss, arguing, in part, that Franklin lacked standing to bring his mischaracterization claim. Dkt. 17. On July 28, 2010, the Court granted in part and denied in part Defendants' motion and dismissed Franklin's stand-alone mischaracterization claim. *See* Dkt. 28 at 4-6. Thus, Franklin's remaining claims are dependant upon Defendants' failure to investigate, assess, and compensate the insureds for the DV of their automobiles.

On May 5, 2011, Franklin filed a motion for class certification. Dkt. 36. In support of his motion, Franklin submitted two expert reports by Nayak L. Polissar, Ph.D. ("Polissar") (*Id*. Exhs. 33 & 34), and two expert reports by Kristin L. Wood, Ph.D. ("Wood") (*Id*. Exhs. 10 & 11). On June 10, 2011, Defendants responded (Dkt. 38) to the motion for class certification, filed a motion to exclude Polissar's reports (Dkt. 47), and filed a motion to exclude Wood's reports (Dkt. 49). On July 5, 2011, Franklin responded to the motions to exclude. Dkts. 63 & 64. On July 8, 2011, Franklin replied to his motion

ORDER - 2

to certify the class (Dkt. 70) and Defendants replied to their motions to exclude (Dkts. 66 & 69).

On July 26, 2011, Defendants filed a motion for leave to file a surreply to Franklin's reply for class certification. Dkt. 71. On July 28, 2011, Franklin responded. Dkt. 72.

## II.  FACTUAL BACKGROUND

**A.   Franklin's Individual Claims**

On July 3, 2008, GEICO General issued an automobile insurance policy to Franklin. Dkt. 17-2 at 4-33 ("Policy"). The Policy included UMPD coverage (*id*. § IV), and GEICO General agreed to pay Franklin for property damage that he was legally entitled to recover (*id*., LOSSES WE WILL PAY, ¶ 2). The Policy defined "property damage" as "damage to or destruction of property." *Id*., DEFINITIONS, ¶ 6.

On November 1, 2008, Franklin was involved in an automobile accident with an uninsured motorist in Pierce County, Washington. Dkt. 37, Declaration Stephen M. Hansen ("Hansen Decl."), Exh. 28, Declaration of Richard Franklin, ¶ 2. It is undisputed that Franklin's vehicle was damaged and that the estimate to repair the damage was approximately $5,098. Dkt. 1, ¶ 4.1; Dkt. 15, ¶ 4.1. It is also undisputed that GEICO General elected to repair the vehicle and paid Franklin approximately $4,998 (the estimate minus the deductible). *Id*.

Defendants assert that Franklin's vehicle may have suffered additional damage after the accident but before the original estimate. During the deposition of Franklin's wife, Debra, defense counsel questioned her about tweets that she had posted on her Twitter account. Dkt. 40-7, Deposition of Debra Franklin at 37-42. On November 3, 2008, two days after the accident, Debra tweeted that Franklin had "slammed" the car into rockery. *Id*. at 38. At the deposition, Debra confirmed that Franklin had "pushed – or backed into the rockery in the back of [their] house." *Id*.

ORDER - 3

On December 10, 2009, Darrell Harber prepared a "Vehicle Evaluation Report" of Franklin's vehicle. Dkt. 40-4 ("Harber Report"). The report listed the date of loss as November 1, 2008, and concluded that the total cost of repairs would be $6,043.43. *Id*. at 1. This cost was based on the original November 23, 2008 estimate and an estimate for "additional repairs" dated December 3, 2009. *Id*. at 7-11. With regard to DV, the Harbor Report estimated the pre-loss value of Franklin's vehicle "to be $11,993.75 to $13,256.25." *Id*. at 4. The report provides an assessment of the post-loss value as follows:

> After addressing the $6,043.03 in total repairs, the type and location of these repairs and the overall affect they have on the vehicle, it is my professional opinion that this vehicle has a loss in value, due to the accident. I have determined the Post Accident Value of the above referenced vehicle to be $8,838 which assumes all remaining damage, if any, has been repaired and the vehicle has been returned to pre-loss condition as close as humanly possible. It is my professional opinion that as a result of the collision on November 1, 2008 the subject vehicle suffered diminution of **the actual cash value of the vehicle** in the amount of $3,788.

*Id*. (emphasis added).

On December 10, 2009, Franklin sent GEICO General a letter requesting reimbursement for the vehicles' DV. Dkt. 40-8. Franklin alleges that, after months of dealing with GEICO General, the insurance company offered to compensate Franklin for his vehicle's DV. Dkt. 1, ¶ 4.4; *see also* Dkt. 40-8. Franklin refused the offer because he claims it was insufficient. *Id*.

**B.   Class Claims**

Defendants sell UMPD coverage in 26 states, including Washington.[1] In every state, the insurance policy language provides that Defendants would pay for damages that "the insured is legally entitled to recover . . . ." Dkt. 36, Exh. A ("Uniform Policy

---

[1] The other 25 states are Alaska, Arkansas, California, Colorado, District of Columbia, Delaware, Georgia, Illinois, Indiana, Louisiana, Maryland, Mississippi, North Carolina, New Jersey, New Mexico, Ohio, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Vermont, and West Virginia.

ORDER - 4

Language Chart"). Franklin contends that this language requires Defendants to compensate insureds not only for the cost of repairing their vehicles but also for DV loss "stemming from irreparable and continuing physical damage to the vehicles." Dkt. 36 at 9.

Franklin alleges that Defendants apply a "don't ask, don't tell" policy to DV losses. *Id*. at 16. Based on the DV procedures, Defendants' adjusters are instructed to inform DV claimants as follows: "The estimate and repairs completed are meant to bring the vehicle back to its pre loss condition. Once it is brought to pre loss condition, there is no diminished value." Dkt. 37-2 at 127. Defendants' Vice President of Auto Damage, William DeGrocco, testified that Defendants do not train or instruct their adjusters to disclose or pay a DV claim. Hansen Decl., Exh. 2, Deposition of William DeGrocco at 127. Mr. DeGrocco also confirmed that Defendants do not recognize a DV loss and will pay an insured's DV claim "just to resolve the claim." *Id*.

### III. DISCUSSION

**A.   Surreply**

Defendants request leave to file a surreply so that they may respond to the exhibits that Franklin attached to his reply brief. Dkt. 71. Although the Court agrees with Defendants that submitting new evidence in support of a reply brief is improper, the Court finds that there is no need for further briefing on the issues of class certification. The Court has considered Franklin's exhibits and finds that Defendants are not prejudiced by not having an opportunity to respond. Therefore, the Court denies Defendants' motion for leave to file a surreply.

ORDER - 5

**B.     Motions to Exclude**

The Court must begin its analysis of the expert reports by explaining the issue for which the reports have been submitted: the DV of damaged vehicles.  Washington courts recognize a difference between diminished value and stigma damages:

> A vehicle suffers diminished value when it sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its **pre-loss condition**. The remaining, irreparable physical damage, such as, for example, weakened metal which cannot be repaired and which results in diminished value. In contrast, stigma damages occur after the vehicle has been fully restored to its **pre-loss condition**, but it carries an intangible taint due to its having been involved in an accident.

*Moeller v. Farmers Ins. Co. of Washington*, 155 Wn. App. 133, 142, *review granted by* 169 Wn.2d 1001 (2010) (emphasis added).  Moreover, restoring a vehicle to

> pre-loss condition requires that an insured be compensated for all physical damage incurred, to include, for example, unrepaired dents, bends or stress to the vehicle's structure, and damage to the function or appearance of the vehicle.

*Degenhart v. AIU Holdings, Inc.*, 2010 WL 4852200, *5 (W.D. Wash. 2010).   "In short, residual physical damage is covered . . . . Stigma damage is not."  *Id.*

On the contrary, the rule in Georgia is that an insured must compensate an insured for both diminished value and stigma damages.  *See State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498 (2001).  The Georgia Supreme Court has reasoned as follows:

> the fact of physical damage resulting from an event covered by [an automobile insurance policy] can reduce the value of a vehicle, even if repairs return it to pre-loss condition in terms of appearance and function; the policies issued by [the insurer] obligate it to compensate its policyholders for that loss of value, notwithstanding repairs that return the vehicle to pre-loss condition in terms of appearance and function, if the repairs do not return the vehicle to its pre-loss value; and [the insurer] is obligated to assess that element of loss along with the elements of physical damage when a policyholder makes a general claim of loss.

*Id.* at 509.  In other words, the insured's loss "is the difference between the value of the vehicle prior to the loss and its value after the loss."  *Id.* at 502.

ORDER - 6

In this case, Defendants move to exclude the expert opinions of Polissar and Wood. Dkts. 47 & 49. Defendants argue that Polissar's reports fail to meet the standards set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702 (Dkt. 47 at 3) and that Wood's reports fail to meet the standards of *Daubert*, Fed. R. Evid. 702, or Fed. R. Evid. 703 (Dkt. 49 at 4).

### 1. Standards

If expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," such testimony is admissible so long as:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The trial judge must perform a gatekeeping function to ensure that the expert's proffered testimony is both reliable and relevant. *See United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007). The gatekeeping function requires that the judge assess whether "the reasoning or methodology underlying the testimony is scientifically valid," and "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

### 2. Polissar's Reports

While it is doubtful that Polissar's opinions would pass scrutiny under the standards set forth above[2], the opinions also are flawed in that they have no bearing on the elements of Franklin's cause of action under Washington law. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011) (if an expert's testimony does nothing to advance the party's case, the court "can safely disregard what he has to say.").

---

[2] *See Fosmire v. Progressive Max Insurance Company*, No. 3:10-cv-05291-JLR, slip op. at 7-12 (W.D. Wash Oct. 11, 2011) (excluding similar reports by Pollissar for similar causes of action).

ORDER - 7

In this case, Polissar states that he and his team "will use multiple regression analysis to estimate the effect of properly repaired damage on the sale price of automobiles." Dkt. 37-4 at 51, ¶ 15. Polissar's other report goes into great detail on how multi-variable, statistical analysis will "determine the impact of accident damage (followed by proper repair) on the sale price of a vehicle." *See* 37-4 at 60. But Franklin is entitled, under Washington law, only to damages related to residual physical harm such as weakened metal, unrepaired dents, bends or stress to the vehicle's structure, and damage to the function or appearance of the vehicle. He is not entitled to stigma damages, which is what Polissar's reduced price "estimate" purportedly relates to. Therefore, the Court grants Defendants' motion and Polissar's reports will be excluded from consideration of class certification.

### 3. Wood's Reports

Although Wood's reports are relevant to Franklin's cause of action, the reports are mostly, if not completely, irrelevant to the issues of class certification. Wood provides opinions on the existence and extent of irreparable physical damage to a vehicle that has been involved in an accident. Washington courts, however, already recognize that such damages exist. *See Moeller*, 155 Wn. App. at 142. With regard to the extent of such damages, this is an issue for trial[3] and provides little, if any, support for the issues of class certification.

While Wood's opinions have limited value regarding the present issues before the Court, the Court is not persuaded that it must perform a gatekeeper function on these opinions at this point of the proceeding. Moreover, the reports seem to support Defendants' position that irreparable physical damage must be determined on an

---

[3] To highlight the anticipated battle of expert opinions on the issue of irreparable physical damage, Wood provides that "part loosening and secondary damage cannot be reasonably anticipated or predicted [and] . . . cannot be visually diagnosed or tested with any existing standard practice." Dkt. 37-1 at 185-186, ¶ 21.

ORDER - 8

individual basis after each particular accident. Therefore, the Court denies Defendants' motion without prejudice.

**C.     Motion to Certify**

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979). In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

The court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Even if these criteria are met, the court has discretion over whether to certify a class. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

An action may be maintained as a class action if the court finds that: (1) common questions of law and fact predominate over questions affecting individual members ("predominance"), and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy ("superiority"). Fed. R. Civ. P. 23(b)(3).

The Court will first consider Franklin's proposed multi-state class and then consider Franklin's Washington-only class. The Court will finally consider Franklin's request to certify a class for injunctive or declaratory relief.

### 1. Multi-State Class

In *Hovenkotter v. SAFECO Ins. Co. of Illinois*, 2010 WL 3984828, (W.D. Wash. 2010), the plaintiff moved the Court to certify a 28-state class based on almost identical[4] UMPD theories of liability. *Id.* at *1-*2. Judge Robart declined to certify the multi-state class for numerous reasons. *Id.* at *7-*8. The relevant portion of the order provides as follows:

> The court declines to certify this breach of contract class action because Mr. Hovenkotter fails to meet the threshold criteria of commonality. First, there are 28 states at issue in this putative class which raises conflicts of law and due process problems. Second, there are a number of Safeco policies at issue. Even limiting the policies to the terms identified by Mr. Hovenkotter, the court's review of the 268-page "Policy Language Excerpts" provided by Safeco evidences the many differences, however slight, that exist among the various policies. Mr. Hovenkotter attempts to reduce the more than 200 policies down to a common sentence-"we will pay damages which you are legally entitled to recover"-to show that there is no significant difference in the policies. Even accepting this limitation, however, Mr. Hovenkotter's argument is fraught with problems: (1) every policy is governed by a different state's breach of contract law, the application of which depends on that state's conflicts of law requirements; (2) to some extent, each state differs in its breach of contract jurisprudence including applicable statutes of limitations, forms of recovery, and available contract defenses; and (3) to understand whether Safeco breached its policies by failing to "pay damages which [its insureds] are legally entitled to recover," this court would need to look to each state's tort law to determine how damages are measured after an accident.
> Finally, certifying this class would require this court, sitting in Washington state with no personal jurisdiction over a plaintiff in, for example, Alaska, other than that he failed to opt-out of this class action, to apply Alaska contract and tort law to his claim on a class-wide basis. Moreover, according to Safeco, only one of the 28 states has addressed and affirmatively ruled on the availability of diminution value: Georgia. *See State Farm Mutl. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (Ga. 2001). Yet, Mr. Hovenkotter asks this court to make a determination as to the availability of diminution value as to the remaining 27 states.
> Mr. Hovenkotter seeks to circumvent these problems by combining the 28 states' tort laws to show that they all require that Safeco pay diminution value. This is not supported by the case law. Mr. Hovenkotter cites cases from each jurisdiction with various rulings on what constitutes the appropriate measure of damages. These rulings cover a wide swath of

---

[4] The *Hovenkotter* motion and the instant motion are so similar that they contain identical spelling errors. *Compare, e.g., Hovenkotter*, Case No. 09-0218, Dkt. 44 § III.C.3 *with* Dkt. 36 § III.C.3 ("Plaintiff's claims be typical of the *clams* or defenses of the Class.") (emphasis added).

ORDER - 10

> legal terrain. According to Mr. Hovenkotter's chart, some state courts hold that a plaintiff is legally entitled to recover "diminution in value;" others limit recovery to "loss in value" or "depreciation;" and still others limit recovery to "the difference between the value of the chattel before the harm and the value after the harm," "full compensation for the injury sustained," or "reduction in market value." Thus, contrary to Mr. Hovenkotter's assertion, the amount of tort damages available to plaintiffs is not consistent among the 28 states and therefore defeats the notion that the putative class has common legal issues. For example, a plaintiff in Idaho may be entitled to "diminution in value" while a plaintiff in South Dakota is entitled to "full compensation for the injury sustained." As stated above, this court declines to entertain the question of whether a South Dakota court would consider diminution value as compensable if the vehicle is fully repaired. *See Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (applying law of state without significant contacts is "fundamentally unfair"). The court therefore declines to certify a class action in this case.

*Hovenkotter*, 2010 WL 3984828 at *7-*8.

In this case, Franklin fails to sufficiently address the problems that Judge Robart identified. First, Defendants have issued over 132 policies in the 26 relevant states during the relevant time period. Dkt. 38, Exh. 29. The policies issued in 17 of the states contain choice of law provisions that require those contracts to be interpreted pursuant to the laws of the specific state. *Id*. Thus, the determination of a class member's cause of action requires consideration of each state's breach of contract law, including applicable statutes of limitations, forms of recovery, and available contract defenses. *See* Dkt. 38, Exh. 20. Although Franklin has submitted charts attempting to minimize conflicts and categorize similar laws (*see* Dkt. 36, Exhs. A-F), the charts only reinforce the complications and difficulties in determining the bounds of each policy in each state. In other words, the numerous possibilities show that commonality has not been met.

With regard to damages, the issues are clearly not "common" between the class states. In fact, the issue of DV damages may be an issue of first impression in some states. For example, the Court would be required to interpret the statutes of Ohio and Maryland, which Franklin proposes could be solved by redefining the class based on time periods to preclude certain class members. *See* Dkt. 70, Exh. A. The mere fact that there

ORDER - 11

are so many inconsistencies between the class states belies the notion that there are common legal issues among the class.

Therefore, the Court finds that Franklin has failed to meet his burden on the element of commonality for the multi-state class, and the Court declines to certify the multi-state class. Franklin argues that if the Court declines to certify this class, the Court should certify a smaller class of "less than all 26 States." Dkt. 70 at 14. It is, however, Franklin's burden to present adequate classes for the Court to certify, and the Court will not *sua sponte* divide and certify Franklin's proposed classes without allowing the parties proper notice and opportunity to be heard.

### 2. Washington Class

Franklin requests that, if the Court declines to certify the multi-state class, the Court should certify a Washington-only class. Dkt. 36 at 26. Although this class avoids the legal inconsistencies between the laws of several states, Franklin fails to show that this class meets the requirements of commonality, predominance and superiority.

With regard to commonality, Franklin has failed to show that liability or damages are common among the class. First, it is unclear whether GEICO General's alleged "don't ask, don't tell" policy alone establishes a breach of contract claim under Washington law. In fact, Defendants have submitted evidence that the Washington Office of Insurance and at least one Washington trial court require the claimant to prove a DV claim. *See* Dkt. 38, Exhs. 4(B) & 27. In Franklin's case, once Franklin asserted a claim for DV damages, GEICO General investigated and took the position the vehicle had been returned to its "pre-loss condition." Dkt. 40-8. Thus, Franklin has failed to establish that Defendants' actions present a common question of breach of contract, especially if the burden rests on an insured to prove a vehicle suffered irreparable damage.

ORDER - 12

Second, even if the "don't ask, don't tell policy" establishes a common violation, the individual nature of the damages at issue preclude a finding of commonality, predominance, or superiority. The facts of Franklin's claim exemplify the individual nature of DV claims. There exists an individual factual question of whether all of the alleged damage occurred during the initial accident, as in the case of Franklin, or whether he incurred more damage when he backed the vehicle into the rockery at his house. There also exists an individual factual question as to the cost of restoring the vehicle to its pre-loss condition (in Franklin's case, the original estimate was $5098.46; the Harber Report estimated an additional $944.57). For example, the Harber Report noted that a "complete disassembly" would be required to "determine the full extent of the remaining damage . . . ." Harber Report at 3. Franklin has failed to establish that these questions of fact are common among the class.

Furthermore, each class member has presumptively made a claim on a unique vehicle that had been involved in a unique accident. Even if the occurrence of irreparable physical damage was a common question among the class, this issue does not predominate over the individual extent of each class member's damage. Franklin has also failed to persuade the Court that a class action is the superior method for fairly and effectively adjudicating the controversy. At this point, it appears that the proposed class requires a fact finder to determine liability as to each class member's claim, as well as the extent of irreparable damages. Accordingly, a class action is not the superior method to handle a trial on the merits for each class member. Therefore, the Court declines to certify Franklin's proposed Washington class.

### 3. Injunctive or Declaratory Relief Class

Rule 23(b)(2) provides that a class action may be maintained if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

ORDER - 13

class as a whole. Fed. R. Civ. P. 23(b)(2). A class of this type, however, is inappropriate with respect to claims for monetary relief that are not "incidental" to the requested relief. *Dukes*, 131 S. Ct. at 2650-61.

In this case, Franklin has failed to show that his claim or any class member's claim for monetary relief is incidental to the requested injunctive or declaratory relief. Even if Franklin proved that Defendants refused to act on a ground generally applicable to the proposed class, the individualized issues of damages are central to each class member's DV claim. As the Supreme Court set forth in *Dukes*, this type of action is inappropriate for a Rule 23(b)(2) class. Therefore, the Court denies Franklin's request to certify a Rule 23(b)(2) injunctive or declaratory relief class.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Franklin's motion to certify class (Dkt. 36) is **DENIED**, Defendants' motion to exclude the expert reports of Polissar (Dkt. 47) is **GRANTED**, Defendants' motion to exclude the expert reports of Wood (Dkt. 49) is **DENIED**, and Defendants' motion for leave to file a surreply (Dkt. 71) is **DENIED**.

DATED this 31st day of October, 2011.

BENJAMIN H. SETTLE
United States District Judge